UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NIKKI WEBSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02349-TWP-KMB |
| | ) |
| MHM HEALTH PROFESSIONALS. LLC dba | ) |
| CENTURION PROFESSIONALS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant MHM Health Professionals, LLC, ("MHM") dba Centurion Professionals, LLC ("Centurion") (Filing No. 57). Plaintiff Nikki Webster ("Webster") was terminated from her employment with MHM in November 2022. Webster initiated this action alleging sex and disability discrimination and retaliation claims against MHM pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. For the reasons that follow, summary judgment is **granted**.

### I.   BACKGROUND

The following facts are largely undisputed. Where disputes arise, however, they are conveyed in a light most favorable to Webster, against whom summary judgment is sought. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

**A.   The Parties**

MHM is a subsidiary of Centurion, which provides healthcare services to incarcerated persons in correctional facilities across the United States (Filing No. 59-1 at 6). Webster, a

Licensed Practical Nurse, began working for MHM's predecessor, Wexler of Indiana, LLC ("Wexler"), in July 2020 as a Health Services Administrator ("HSA"). MHM took over the contract with the Indiana Department of Corrections ("IDOC") in June 2022, and retained Webster as a HSA at the Indiana Women's Prison (Filing No. 59-3 at 2). HSAs are responsible for the overall operations of the clinical program at their designated facility (Filing No. 69-4 at 1). Their specific job duties include, among other things, liaising with regional management, providing technical and administrative oversight to on-site staff, performing state-mandated audits, and responding to emergencies. *Id.* HSAs are generally required to work at least forty hours per week (*see* Filing No. 59-3 at 2), and they often work overtime in the event of emergencies, like unexpected lockdowns, or when required to cover a shift for a sick colleague, (Filing No. 66-5 at 19:11–16).

**B.    Webster's First Performance Improvement Plan and Medical Leave**

Like all MHM employees, HSAs are subject to regular performance reviews and corrective action when appropriate (*see* Filing No. 68-1 at 17). On September 29, 2021, Webster's then-supervisor, Stephanie Dorethy, issued Webster a performance improvement plan ("PIP") for observed communication and leadership issues (Filing No. 69-1 at 1; *see also* Filing No. 66-1 at 93:15–24). Specifically, the PIP charged Webster with "[c]ommunicating in an abrupt manner and/or with an abrasive tone," failing to "take ownership of learning her position and being fully accountable for her site," and struggling to "hold[] her staff accountable to their positions." (Filing No. 69-1 at 1). The PIP gave Webster thirty days to show improvement lest she face additional corrective action. *Id.* at 1–2.

Before completing the PIP, Webster requested medical leave under the FMLA (Filing No. 69-2 at 1). In 2014, Webster was diagnosed with a serious medical condition called Factor V Clotting Disorder ("Factor V"), periodically limiting her ability to work. Between July 2021 and

2

October 2021, Webster had to regularly leave work for blood testing at the hospital, causing large amounts of stress. On November 3, 2021, Webster's doctor certified that Webster would be unable to work over forty hours per week as "mandated" given her numerous chronic conditions, including her Factor V blood clotting disorder (Filing No. 59-9 at 2–5). On November 4, 2021, MHM approved the request for FMLA leave, effective from October 28, 2021, through December 13, 2021 (Filing No. 59-14 at 2). On December 9, 2021, Webster requested that her leave be extended through January 17, 2022, (Filing No. 69-6 at 1), which was also approved, (Filing No. 69-7 at 1).

On January 7, 2022, Webster submitted a "Return to Work Certification Form" in which her doctor limited her to working eight hours per day and forty hours per week due to her health conditions (Filing No. 69-10 at 1). On January 18, 2022, MHM's Human Resources manager, Matthew Weis ("Weis"), informed Webster that MHM would not approve her work restrictions because the company could not guarantee an eight-hour workday given the nature of the HSA position and the prison environment generally (Filing No. 69-11 at 1; Filing No. 66-4 at 47:17–49:3). Christina Timberlake, the Assistant manager for Leave of Absence, corroborated that MHM could not accommodate Webster working just eight hours per day "because [Ms. Webster] worked inside of a prison and it is a little uncontrollable." (Filing No. 66-5 at 19). Timberlake explained "[y]ou have no control over a lockdown that might prevent you from actually leaving or if someone on your team in that position calls out and you have to pick up the shift because someone has to be there." *Id.*

Webster then requested additional FMLA leave, but she had exhausted the allowable twelve weeks under the statute (Filing No. 69-12 at 1). As an alternative, Weis offered to provide thirty days of personal leave from January 21, 2022, through February 21, 2022. *Id.* Webster declined

3

(Filing No. 66-1 at 120:24–121:8). Thereafter, Webster's doctor approved her to return to work with no restrictions on January 26, 2022, and she did so (Filing No. 69-13 at 1).

C. **Webster's Return to Work and First EEOC Charge**

While Webster was on leave, MHM assigned Anthony Jacobs ("Jacobs") to the HSA position at the Indiana Women's Prison (Filing No. 66-3 at 35:8–15). Jacobs had previously served as an HSA in the state of Delaware, and when that contract ended, came to Indianapolis to support the HSA's in Indiana. *Id.* at 35:16-24. When Webster returned from leave, she discovered that Jacobs had taken over her office and she had to move to a smaller office (Filing No. 66-1 at 68:11-13; Filing No. 66-3 at 26:10–14). Jacobs was also the subject of several sexual harassment complaints, (Filing No. 59-20 at 67:8–68:17). Though the timing is unclear, Webster eventually reported the complaints to Human Resources, (Filing No. 59-20 at 67:8–68:21), and Jacobs received a written warning for violating Centurion's policy against workplace harassment, (Filing No. 69-15 at 1).

In any event, Webster returned to work as an HSA with the same pay and benefits (Filing No. 66-1 at 67:22–68:10). Because she never completed the September 2021 PIP, however, her new manager and MHM's interim Regional Director, Brittany Wildman ("Wildman"), renewed the PIP on February 2, 2022 (Filing No. 69-16 at 1). Webster completed the extended PIP, and it was closed on February 25, 2022 (Filing No. 66-2 at 23:18–24:13).

Despite closing the PIP, Wildman met with other HR leaders, including Jackie Carr ("Carr"), to discuss reclassifying Webster as an Assistant HSA. *Id.* at 18:1–21:25. There was discussion between April Meggs, Wildman and Carr regarding creating and placing Webster in an Assistant HSA position (Filing No. 66-2 at 21:1–25). On February 28, 2022, Carr informed Webster that she would continue to work under the HSA title until the Assistant HSA job

4

description was finalized (Filing No. 69-17 at 3). In the meantime, Webster was to "focus on the clinical side of things" while Jacobs would focus on operations. *Id.*; (Filing No. 66-3 at 24:23–25:4). Nonetheless, the evidence shows Webster's formal title never changed, (Filing No. 66-2 at 63:3–11), the Assistant HSA position never materialized, and Jacobs left the company a few months later (*see* Filing No. 59-24 at 2).

On March 6, 2022, Webster filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting sex and disability discrimination claims against MHM (Filing No. 69-18 at 1–2). Webster claimed MHM demoted her because of her disability and in retaliation for requesting an accommodation and reporting sexual harassment claims against Jacobs. *Id.* MHM responded, (Filing No. 59-32), and the EEOC subsequently issued a right to sue letter (Filing No. 69-34).

D. **Webster's Second PIP and Termination**

Over the next several months, Webster received satisfactory performance reviews, both formally and informally (Filing No. 66-3 at 30:7–23; Filing No. 69-19 at 1; Filing No. 69-27 at 3). Unfortunately for Webster, Wildman found that her efforts to improve fell short, and on October 4, 2022, Wildman issued a second PIP (Filing No. 69-35 at 1). This second PIP outlined specific instances of Webster's failure to satisfy the requirements of the HSA position. For example, Webster "incorrectly directed her Dental staff on how to obtain a FedEx account without reaching out for assistance" and allegedly failed to prepare for a Covid clinic she had been assigned to run. *Id.* at 2. Wildman opined that Webster's lack of organization on the Covid clinic "resulted in additional work for the [regional office]" causing Wildman, the regional director, to have to work late into the evening to do Webster's work for her. *Id.* Ultimately, Wildman "did not see an

improvement to justify keeping . . . Webster in her role as [HSA]," and Webster was terminated on November 4, 2022. *Id.*; (Filing No. 66-3 at 19:11–16).

E.  **Webster's Second EEOC Charge and Lawsuit**

On December 13, 2022, Webster filed a second EEOC charge against MHM, this time complaining of two instances of discrimination: 1) the February 2022 "demotion," and 2) her termination (Filing No. 59-33 at 2). The EEOC issued a right to sue letter on or around January 30, 2023, and this lawsuit followed.

The operative complaint asserts ten claims of discrimination and retaliation under the ADA, Title VII, and the FMLA (Filing No. 6 at 1). Counts I through V allege disability discrimination and retaliation, in violation of the ADA. *Id.* at 4–5. Counts VI through VIII allege sex discrimination and retaliation, in violation of Title VII. *Id.* at 5. Counts IX and X allege interference with her rights and retaliation, in violation of the FMLA. *Id.* at 5–6. The Defendant subsequently moved for summary judgment on all claims, which is now ripe for decision (Filing No. 57).

## II.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the Court reviews "the record in the light most favorable to the non-moving party and

draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotations marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

In her Amended Complaint, Webster asserts claims for sex discrimination under Title VII, disability discrimination under the ADA, interference with rights under the FMLA, and retaliation (Filing No. 6). MHM seeks summary judgment on all of Webster's claims. The Court will address each claim in turn.

A.     **Sex Discrimination**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At summary judgment, the "singular question" for the Court is "whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Igasaki v. Ill. Dep't of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021) (citations and quotation marks omitted).

The legal standard is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). Although *Ortiz* has retired the direct versus indirect approach in discrimination cases, *Ortiz* at 766, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) provides a helpful outline for analyzing employment discrimination claims. *Igasaki*, 988 F.3d at 957. To make a prima facie case of discrimination under *McDonnell Douglas*, the plaintiff must show: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside her protected class received better treatment from her employer. *Id.* Then, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003). If the employer succeeds, then the burden shifts back to the plaintiff to show that the employer's reasoning for the adverse employment action is pretextual. *Id.*

.

MHM does not dispute that Webster is a member of a protected class and has not timely disputed that she met her employer's legitimate expectations.[1] Therefore, the Court considers only whether Webster suffered an adverse employment action and whether similarly situated employees outside her protected class were treated more favorably. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001).

**1. Adverse Employment Actions**

Webster alleges that both her February 2022 "demotion" and her November 2022 termination were motivated by sex discrimination. MHM admits that Webster's termination was adverse but argues that summary judgment is warranted on Webster's demotion-based claims because she returned from FMLA leave with the same job title, pay, and benefits (Filing No. 58 at 16). Webster responds that despite retaining the HSA title, she was demoted and suffered an adverse employment action when, upon her return, MHM stripped her of the operational aspects of the HSA position and required that she focus only on the clinical aspects of the job (Filing No. 65 at 23).

Adverse employment actions typically fall into one of three categories: (1) termination or reduction in compensation; (2) transfers or changes in job duties that "cause an employee's skills to atrophy and reduce further career prospects"; and (3) intolerable changes in job conditions, such as a hostile work environment. *Reives v. Ill. State Police*, 29 F.4th 887, 894 (7th Cir. 2022). Not every inconvenience will suffice to meet the adverse employment action standard; rather, the

---

[1] MHM specifically addresses the second element of the *McDonnell Douglas* test for the first time in its reply brief (Filing No. 75 at 12). Generally, arguments raised for the first time in reply are waived. *United States ex rel. Heath v. Indianapolis Fire Dep't*, No. 1:15-cv-00425, 2017 WL 1435711, at *8 n.4 (S.D. Ind. Apr. 24, 2017). However, whether the plaintiff was meeting her employer's legitimate expectations often overlaps with the pretext analysis, which is included in Defendant's opening brief. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) ("As we have pointed out on several occasions, this issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext."). Nevertheless, the Court need not reach the issue of Webster's performance because, as explained below, Webster cannot make out a prima facie case of discrimination as she has not identified a similarly situated employee who was treated more favorably than she was.

employee must show that "material harm has resulted from . . . the challenged actions." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002) (omission in original) (citation omitted).

As an initial matter, the undisputed evidence does not support Webster's claim that she was demoted. Webster concedes that she retained the HSA title for the duration of her employment and that her pay and benefits remained the same when she returned from medical leave. While MHM contemplated downgrading Webster to Assistant HSA, it is undisputed that her formal job title remained the same, and the threatened downgrading never occurred. "An unfulfilled threat, which results in no material harm, is not materially adverse." *Ajayi*, 336 F.3d at 531. Therefore, Webster has not made out a demotion-based discrimination claim.

Webster also has not established that she "otherwise" suffered an adverse employment action when she was told to focus only on clinical duties. Although there is evidence that Webster was relegated to "floor stuff" after previously being responsible for communicating with IDOC leadership, (*see* Filing No. 66-3 at 25:19–20), the burden was hers to demonstrate that the change in job duties was materially adverse. For instance, Webster has put forth no evidence demonstrating that her focus on clinical work reduced her career prospects or rendered her ineligible for certain benefits like subsequent increases in responsibility or promotions. *See Reives*, 29 F.4th at 894 (finding no adverse employment action when the plaintiff failed to explain how a downgrade on his performance evaluations affected his promotion prospects). And while Webster may have been understandably frustrated when MHM moved her into a smaller office, she likewise has not shown that such a change affected the "terms, conditions, or privileges of employment." *See* 42 U.S.C. § 2000e-2(a)(1). Therefore, Webster's post-leave change in job duties has not form the basis of her sex discrimination claim.

10

But because Webster was terminated, she may still make out a prima facie case if she can identify an employee with whom she was similarly situated and who was treated more favorably by her employer.

### 2. **Similarly Situated Employees**

Similarly situated employees must be "directly comparable" to the plaintiff "in all material respects." *Igasaki*, 988 F.3d at 958 (citations and quotation marks omitted). To determine whether employees are directly comparable, the Court considers whether the employees (1) held the same job description, (2) were subject to the same standards, (3) were subordinate to the same supervisor, and (4) had comparable experience and qualifications. *Ajayi*, 336 F.3d at 532. When a plaintiff alleges her employer disciplined her more harshly than her comparator, "the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Reives*, 29 F.4th at 892 (citing *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). "In deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness." *Id.* (alteration, citation, and quotation marks omitted).

Webster has not identified a similarly situated employee who was treated more favorably than she was. First, Webster points to Christian Miller ("Miller"), a non-disabled male, as a similarly situated employee (Filing No. 65 at 9). As Director of Nursing at Indiana Women's Prison, Miller reported directly to Webster. *Id.* Webster notes that, as Miller's immediate supervisor, she counseled him for consistently leaving his work area without authorization, speaking aggressively, and failing to follow through on key medical tasks. *Id.* at 10. MHM asserts that Miller is not a valid comparator because he was subordinate to Webster and his performance deficiencies were distinct from hers (Filing No. 58 at 20). In response, Webster argues that

11

Wildman, and not Webster, was the final decisionmaker when it came to Miller's discipline (Filing No. 65 at 17–19). In her view, because Miller was subject to the same performance standards and was accused of similar shortcomings, he, too, should have been terminated. *See id.*

Webster is correct that the relevant supervisor for purposes of identifying a valid comparator is "the person 'responsible for the contested decision.'" *Coleman*, 667 F.3d at 848 (quoting *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011)). Here, Wildman was responsible for the decision to terminate Webster and, on the other hand, to retain Miller. However, Webster has not identified any case—and the Court is aware of none—where a plaintiff was found to be similarly situated to her direct report and the alleged performance deficiencies were adjudged by the plaintiff herself. That inherent conflict of interest makes it difficult to conclude that Webster and Miller are similarly situated. Moreover, the Director of Nursing is subordinate to the HSA, which could explain the differential treatment. *See Senkse v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (explaining that "comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories"). Accordingly, Miller is not a valid comparator for purposes of Webster's sex discrimination claim.

Next, Webster submits Jacobs as a comparator (Filing No. 65 at 8). In addition to his counseling for the sexual harassment complaints against him, Jacobs also received a written warning in April 2022 for consistently failing to meet deadlines to complete important state-mandated audits (Filing No. 69-21; Filing No. 66-3 at 48:14–51:22). Webster points out that despite Jacobs repeated misconduct and poor performance, Wildman did not put him on a PIP. Webster argues MHM's failure to terminate Jacobs after providing multiple written warnings is evidence of discriminatory animus (Filing No. 65 at 19). MHM maintains that Webster and Jacobs

are not similarly situated because Jacobs worked in a different capacity from Webster as a "floater" HSA from Delaware, and because his alleged misconduct (*i.e.*, inappropriate conduct towards female employees) is materially different from Webster's (Filing No. 58 at 20–21).

The Court agrees with Webster that despite his status as a floater, and alleged misconduct towards women, Jacobs is an employee with whom she is similarly situated. Jacobs held the same title, reported to the same supervisor, and his performance issues were of comparable seriousness. A jury could reasonably find that consistently failing to complete audits in a timely manner is just as serious as mismanaging staff, especially given that performing audits and overseeing clinical staff are both listed as "essential" in the HSA job description (Filing No. 69-4 at 1).

Nevertheless, Jacobs is not a valid comparator because the evidence does not create a genuine dispute as to whether he was treated more favorably than Webster. The April 2022 counseling form notes that Jacobs refused to sign it, and there is evidence that he resigned or was terminated shortly thereafter. (Filing No. 69-21 at 2; *compare* Filing No. 66-3 at 35:25–36:6 (explaining that Jacobs resigned from his position), *with* Filing No. 59-24 at 2 (identifying May 23, 2022, as the date Jacobs was "terminated")). Therefore, the evidence does not establish that Jacobs was treated more favorably despite his performance issues. *See Winsley v. Cook Cnty.*, 563 F.3d 598, 605 (7th Cir. 2009) (rejecting Title VII claim where plaintiff's alleged comparator chose to quit before completing a required analysis to determine whether she could perform her essential job functions). Because Webster has not identified a similarly situated employee who was treated more favorably by their employer, she has not established a prima facie case of sex discrimination under Title VII.

Finally, MHM argues:

> Even if Plaintiff's alleged comparators are similarly situated to her such that she can state a prima facie case of discrimination, which MHM specifically denies,

> Plaintiff still cannot show that MHM's reason for her termination is pretext for discrimination or retaliation. Specifically, MHM has provided a legitimate, nondiscriminatory, nonretaliatory reason for Plaintiff's termination – her poor performance even after being placed on a PIP – and thus the burden shifts to Plaintiff, who must show that MHM's proffered reason is a pretext for discrimination.

(Filing No. 58 at 25). The Court agrees. Webster has not shown pretext. A party establishes pretext with evidence that the defendant's stated reason or employment decision "was a lie—not just an error, oddity, or oversight." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010). MHM consistently assessed Webster's performance issues, established two PIP's, and ultimately determined that Webster had failed to sufficiently improve her performance. Whether MHM's assessment of Webster's job performance was correct is not dispositive, "because the question is not whether the employer's reasons for a decision are 'right but whether the employer's description of its reasons is honest.'" *Brooks v. Avancez*, 39 F.4th 424, 435 (7t Cir 2022). Webster has not shown that any of MHM's reasons or explanations for her termination was a lie, thus she has not shown pretext. Accordingly, summary judgment is **granted** on the sex discrimination claim.

### B. Disability Discrimination

MHM also seeks summary judgment on Webster's disability discrimination claim. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). To determine whether an individual is qualified, the Court must first determine whether the individual satisfies the "necessary prerequisites of the position," before considering whether the individual can perform the essential functions of the position with or without a reasonable accommodation. *Leibas v. Dart*, 108 F.4th 1021, 1025 (7th Cir. 2024).

MHM does not dispute that Webster satisfied the necessary prerequisites of the HSA position. Rather, MHM contends Webster could not perform the essential functions of the job because her disability[2] prevented her from ever working more than eight hours per day or forty hours per week (Filing No. 58 at 15). Webster argues that working over forty hours per week is not an essential function of the HSA position, and MHM failed to accommodate her by not allowing her to work within her doctor-prescribed restriction (Filing No. 65 at 25–26).

The relevant question is not whether HSAs are *always* required to work more than forty hours per week; instead, MHM avers HSAs must be *available* to work overtime when called upon. To determine whether working over forty hours per week when necessary is an essential function, the ADA identifies seven "non-exclusive" categories of evidence for the Court to consider: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents; and/or (7) the current work experience of incumbents in similar jobs. *Tate v. Dart*, 51 F.4th 789, 794 (7th Cir. 2022) (citing 29 C.F.R. § 1630.2(n)(3)).

The evidence before the Court shows no genuine issue of material fact regarding whether working over forty hours per week when needed is an essential function of the HSA job. Although Webster rightly notes that the HSA's working hours are not included in the HSA job description, (*see* Filing No. 69-4), several other pieces of evidence support finding that availability to work overtime is essential. First, the job description does include "respond[ing] quickly to emergenc[ies]" as a condition of the work, *id.* at 2, and Webster's supervisors testified consistently

---

[2] Again, for the first time in reply, MHM argues that Webster's Factor V condition is not a disability as defined by the ADA (Filing No. 75 at 5–6). That argument is waived. *See Heath*, 2017 WL 1435711 at *8 n.4.

15

that those emergencies—like lockdowns or suicide attempts—often prevented workers from leaving at the end of their scheduled shifts (Filing No. 66-4 at 35:8–24; Filing No. 66-5 at 19:6–16). Second, Webster's healthcare provider stated in her FMLA certification form that Webster was "mandated to work over 40 [hours] weekly," which prompted the request for medical leave in the first instance (Filing No. 59-9 at 2). Third, the evidence shows that Jacobs consistently worked more than forty hours per week while employed as an HSA at Indiana Women's Prison (*see* Filing No. 69-38). For example, Jacobs worked approximately fifty-three hours during the week of December 6, 2021, fifty-two hours the week of December 13, 2021, and forty-four hours the week of February 14, 2022. *Id.* at 13, 14. Finally, Webster admitted that being an HSA sometimes required her to work over forty hours per week, and her condition would require her to "delegate" her duties to others should overtime become necessary (Filing No. 66-1 at 79:16–80:4).

Considering all the evidence in the record, the undisputed facts show that being able to work more than forty hours per week is an essential function for HSAs. At bottom, "[p]risons are a uniquely violent and unpredictable environment," *Leibas*, 108 F.4th at 1025, and the HSAs must be available to work overtime if necessary and often without warning. Because Webster's proposed accommodation would not allow her to fulfill that essential function, she was not a qualified individual under the ADA. For that reason, summary judgment on Webster's ADA claim is **granted**.

C.     **FMLA Interference**

Next, MHM seeks summary judgment on Webster's FMLA interference claim. To succeed on an FMLA interference claim, the employee must establish that: (1) she was eligible for the FMLA; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided notice of her intent to take leave; and (5) her employer denied her FMLA benefits

16

to which she was entitled. *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1304 (7th Cir. 2022) (citation omitted). Only the final element is in dispute.

The FMLA requires employers to restore the employee on leave to the same or an equivalent position the employee had before she took qualifying leave. *Id.* (citing 29 U.S.C. § 2614(a)(1)(A)–(B)). MHM maintains that Webster was restored to the same position she held before she went on leave (Filing No. 58 at 13–14). In response, Webster fails to articulate a proper theory under the FMLA. She claims MHM violated the FMLA by refusing to allow her to return to work on her timeline. In other words, Webster believes she was entitled to reinstatement when her doctor certified her return on January 7, 2022—ten days before her leave was scheduled to end (Filing No. 65 at 33). This argument represents a fundamental misunderstanding of FMLA interference claims and cannot suffice to preclude summary judgment. Furthermore, Webster also argues FMLA interference when MHM failed to accommodate her restrictions. *Id.* But this argument is a mere restatement of her ADA claim. At summary judgment, the plaintiff is required to "articulate a legal theory under which [s]he [is] entitled to relief." *Kuntz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). Because Webster has not clearly articulated a legal theory under the FMLA, summary judgment is **granted** on her FMLA interference claim.

D.     <u>Retaliation</u>

Finally, MHM argues it is entitled to judgment as a matter of law on Webster's retaliation claims. To succeed on a retaliation claim under Title VII, the ADA, or the FMLA, the employee must demonstrate she engaged in a protected activity and suffered an adverse employment action as a result and there is a causal connection between the protected activity and the adverse action. *See Coleman v. Donahue* 667 F.3d 835, 859 (7th Cir. 2012) and *Ajayi*, 336 F.3d at 533 (Title VII); *Barnes v. Gen. Motors LLC*, No. 4:20-cv-00087, 2022 WL 4468301, at *9 (S.D. Ind. Sept. 26,

17

2022) (ADA); *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 369 (7th Cir. 2020) (FMLA). MHM concedes that filing the March 2022 EEOC charge and taking FMLA leave are protected activities (Filing No. 58 at 22). And as explained above, MHM does not dispute that termination is an adverse employment action. *Id.* But summary judgment is warranted because Webster has not introduced evidence that would create a genuine dispute of material fact as to whether her protected activities caused her termination.

Webster argues retaliation as she was terminated on November 4, 2022, about six weeks after her EEOC charge was dismissed, and she claims MHM's stated reason for firing her was pretext because Jacobs was treated more favorably than she was (*see* Filing No. 65 at 30). But as the Court has already found, the uncontroverted evidence does not support this theory. Rather, the evidence supports that her termination was based on poor performance.

While Webster successfully completed her first PIP, and was awarded an overall rating of "meets expectations" on her subsequent evaluation, a second PIP began on October 4, 2022, for alleged time management issues, requests for additional support, personal issues, and ineffective communication with staff. The question is not Webster ever met expectations, but whether she was meeting them at the time of the termination decision, which was in November 2022. The designated evidence shows that she was not. Webster has not shown that Wildman's reason for her termination was a mere pretext for retaliation. Therefore, MHM's motion for summary judgment on Webster's various retaliation claims is **granted**.

### IV.   CONCLUSION

For the reasons set forth above, Defendant MHM's Motion for Summary Judgment (Filing No. 57) is **GRANTED**, and Plaintiff Webster's claims are **dismissed**.

Final judgment will issue under separate order.

**SO ORDERED**.

Date: 03/24/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Peter Hall
Holland & Knight LLP
Peter.Hall@hklaw.com

R. Eric Sanders
ROLFES HENRY CO., LPA
esanders@rolfeshenry.com

John Patrick Schomaker
Rolfes Henry Co., LPA
pschomaker@rolfeshenry.com

Gregory A. Stowers
Stowers Legal
gstowers@stowersandweddle.com

Lauren M. Thompson
Amber K. Boyd Attorney at Law
lauren@amberboydlaw.com